# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| | |
|---|---|
| John S. Garrett, )<br>)<br>     Plaintiff, )<br>)<br>v. )<br>)<br>)<br>Melvin Bromell, Jr. Individually and as )<br>Employee/Agent of Heritage Hauling, )<br>Inc.; Heritage Hauling, Inc.; Alexis )<br>Winburn, Individually and as )<br>Employee/Agent of The Travelers )<br>Indemnity Company of Connecticut; and )<br>The Travelers Indemnity Company of )<br>Connecticut, )<br>)<br>     Defendants. )<br>_____) | Civil Action No.: 5:16-cv-02888-JMC<br><br><br><br>**ORDER AND OPINION** |

This case arises out of an automobile collision between Plaintiff John S. Garrett ("Garrett") and Defendant Melvin Bromell, Jr. ("Bromell") while Bromell was driving a vehicle owned by his employer, Defendant Heritage Hauling, Inc. ("Heritage"). This case particularly deals with the subsequent denial of Garrett's claim by Defendant Alexis Winburn ("Winburn"), an insurance claims adjuster working on behalf of Defendant The Travelers Indemnity Company of Connecticut ("Travelers").

Before the court is Defendants' Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) in which Defendants request the court to dismiss Garrett's action because of his failure to state a claim upon which relief can be granted. (ECF No. 22.) For the reasons stated herein, the court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Judgment on the Pleadings.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 12, 2016, Garrett was injured in an automobile collision with Bromell. (ECF No. 1-1 at 7 ¶¶ 16-17.) Heritage contracted with Travelers to provide a policy of automotive liability insurance for the protection of Heritage and its employees/agents including Bromell. (*Id.* at 6 ¶ 12.) This policy was in effect on the date of the collision. (*Id.* at ¶ 13.) Garrett, through his counsel, made a claim under the insurance policy for his injuries stemming from the collision. (*Id.* at 7 ¶ 19.) On April 12, 2016, Garrett's counsel made a settlement demand. (*Id.* at ¶ 22.) On April 29, 2016, Garrett received communication from Winburn and Travelers that Travelers was denying his claim. (*Id.* at ¶ 23.) On the same day, Garrett's counsel called Winburn to discuss Garrett's claim and the reason for the denial. (*Id.* at ¶ 24.) Garrett alleges that, during this conversation, Winburn stated that "[because] Garrett was Caucasian, [and] Bromell was African-American that such racial considerations were favorable and a factor for [Traveler's] denial of Garrett's claim." (*Id.* at 8 ¶ 26.)

Garrett alleges that the statement by Winburn was given with the authority of Travelers, Heritage, and Bromell. (*Id.* at 8 ¶ 27); *see also* (*Id.* at 6 ¶ 14, 7 ¶¶ 15, 21.) Garrett further alleges that Defendants "have a policy, whether written or otherwise, to use the races of claimants and insureds when determining if and when to settle claims and determining an amount to settle such claims" and that there was a conspiracy to "unlawfully diminish and/or defeat insurance claims of claimants based on the race," (*Id.* at 8 ¶¶ 29-30) and because of this policy he has been damaged. (*Id.* at ¶ 32.)

Garrett has filed four causes of action in this case, (1) an alleged violation of 42 U.S.C. § 1981 and the Fifth and Fourteenth Amendments to the United States Constitution, (2) the tort of

outrage, (3) civil conspiracy; and (4) negligence, gross negligence, and negligence *per se*. (*Id.* at 9-10 ¶¶ 34-39, 10-11 ¶¶ 40-46, 11-12 ¶¶ 47-52, 12-14 ¶¶ 53-58.)

This case was initially filed in the Court of Common Pleas for the County of Orangeburg, State of South Carolina (Civil Action No.: 2016-CP-38-00760) on June 10, 2016. (ECF Nos. 1 at 1 ¶ 1; 1-1 at 2.) A Notice of Removal was filed on August 19, 2016, pursuant to the provisions of 28 U.S.C. §§ 1331, 1332, 1441(b) and 1446. (ECF No. 1 at 1.) On October 27, 2016, Defendants filed a Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c). (ECF No. 22.) On November 14, 2016, Garrett filed a Response to Defendants' Motion. (ECF No. 23.) On December 12, 2016, after having been granted an extension by the court, Defendants filed a Reply to Garrett's Response. (ECF Nos. 25, 28.)

## II.   JURISDICTION

As an initial matter, the court must determine whether it has jurisdiction over the causes of action alleged in this case. Federal courts are courts of limited jurisdiction. This case was removed to this court under 28 U.S.C. §§ 1331, 1332, 1441(b) and 1446.

Jurisdiction is proper within this court pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1367 (supplemental jurisdiction). Under section 1331, district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. Garrett's claim of Defendants' violation of 42 U.S.C. § 1981, a federal statute, and the Fifth and Fourteenth Amendments to the United States Constitution support federal question jurisdiction.

District courts also have jurisdiction over claims that are connected to claims in which the district court has original jurisdiction. District courts have ". . . supplemental jurisdiction over all [ ] claims that are so related to claims in the action within such original jurisdiction that they form

3

part of the same case or controversy. . ." 28 U.S.C. § 1367(a). Garrett has alleged three South Carolina state law causes of action, (1) outrage, (2) civil conspiracy, and (3) negligence. These claims are related to Garrett's 42 U.S.C. § 1981 claim. A district court may decline to exercise supplemental jurisdiction over a claim if the claim involves a novel or complex issue of state law. 28 U.S.C. § 1367(c)(1). However, "[g]enerally state tort claims are not considered novel or complex." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743–44 (11th Cir. 2006). Therefore, this court has supplemental jurisdiction over Garrett's state law claims pursuant to section 1367.

Defendants also requested removal to this court on the grounds of diversity of citizenship pursuant to 28 U.S.C. § 1332 and the court finds that jurisdiction on this basis is improper. Defendants removed the case on this ground, due to the alleged fraudulent joinder of Bromell, Heritage, and Winburn. (ECF No. 1 at 5-6 ¶ 11, 6-7 ¶ 13.)

Diversity of citizenship must be established at the time of the filing of the action in order for the court to determine if it has jurisdiction over the case on this basis. *Freeport–McMoRan, Inc. v. K N Energy, Inc.,* 498 U.S. 426, 428 (1991). Citizenship depends on domicile. *Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 663 (4th Cir. 1998).

When this action was commenced, the Complaint alleged that Garrett is a citizen of Orangeburg County, South Carolina (ECF No. 1-1 at 5 ¶ 1), that Travelers is licensed to do business in South Carolina (*Id.* at 6 ¶ 5), and that Winburn and Bromell are citizens and residents of South Carolina (*Id.* at 5 ¶ 2, 4)—Winburn being a resident of Lexington County, and Bromell, a resident of Horry County. (*Id.*) The Complaint also alleges that Heritage is a corporation, organized and existing under the laws of the state of South Carolina with its principal place of business in Horry County. (*Id.* at ¶ 3.)

4

Bromell asserts that Heritage, Winburn, and he were fraudulently joined in this action and that their South Carolina residency should be disregarded, thereby making diversity jurisdiction appropriate with Garrett being a citizen and resident of South Carolina and Travelers being incorporated and having its principal place of business in Connecticut. (ECF No. 1 at 2 ¶ 4, 3 ¶ 5, 6-7 ¶ 13.) The court will address whether Bromell, Heritage and Winburn were fraudulently joined, which will determine whether this case has been properly brought under diversity jurisdiction in addition to federal question jurisdiction.

In order to establish Defendants' liability for his claims, Garrett pleads that Winburn and Travelers act on behalf of and with the authority of Bromell and Heritage. (ECF No. 1-1 at 6 ¶ 14, 7 ¶¶ 15, 21, 8 ¶ 27), that Bromell is the agent of Heritage (*Id.* at 6 ¶ 10), and that Winburn is the agent of Travelers (*Id.* at 6 ¶ 11.) Plaintiff in pleading that Winburn and Travelers act on behalf of Heritage and Bromell, pleads that there is a principal/agent relationship between the parties, thus Heritage and Bromell are responsible for Winburn's conduct.

To show fraudulent joinder, the removing party must demonstrate either "outright fraud in the plaintiff's pleading of jurisdictional facts" or that "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (citing *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)). "The burden on the defendant claiming fraudulent joinder is heavy: the defendant must show that the plaintiff cannot establish a claim against the non-diverse defendant even after resolving all issues of fact and law in the plaintiff's favor." *Marshall,* 6 F.3d at 232–33 (citing *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992)). "Th[e] standard [for fraudulent joinder] is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Hartley*, 187 F.3d at 424. In addition, "[a]ll the plaintiff

5

needs to show is that there is a "glimmer of hope," or a "slight possibility of a right to relief" in state court." *Sibert v. Raycom Media, Inc.*, No. 3:17-CV-1544-CMC, 2017 WL 3721238, at *2 (D.S.C. Aug. 29, 2017) (citations omitted).

Defendants do not allege outright fraud in the pleading of the jurisdictional facts, but allege that no cause of action can be established against Heritage, Bromell or Winburn. (ECF No. 1 at 5-6 ¶ 11, 6-7 ¶ 12-13.) Upon review of these allegations, the court finds that, Bromell, Heritage and Winburn have not been fraudulently joined.

Due to the alleged denial of Garrett's insurance claim on the basis of his race (ECF No. 1-1 at 8 ¶ 26), he brings four causes of action. As to Garrett's claim of Defendants' alleged violation of 42 U.S.C § 1981, "[t]o [establish] a section 1981 claim, a plaintiff must prove that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest [the ability to make or enforce a contract]." *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006). Garrett has not pled that he is a party to the insurance policy (contract), only that he filed a claim stemming from the collision under the policy. (ECF No. 1-1 at 7 ¶ 19.) Garrett is a third-party and under South Carolina Law, a third-party who is not a party to an insurance contract, cannot sue an insurer to enforce the contract. *See Trancik v. USAA Ins. Co.*, 581 S.E.2d 858, 861 (S.C. Ct. App. 2003) (a third-party who is not a party to a contract cannot bring suit for breach of contract).

However, section 1981 is a two-part statute. A person's right to "enforce" a contract must not be impaired on the basis of race, but a person's right to "make" a contract cannot be impaired either. *Patterson v. McLean Credit Union*, 491 U.S. 164, 176-77 (1989), *superseded by statute on other grounds* (citing 42 U.S.C. § 1981(a)). The denial of Garrett's alleged claim for the insurance proceeds as a result of the collision, on the basis of race falls within the confines of section 1981

6

because Travelers prevented Garrett from having the opportunity to make a contract. *See Broomes v. Schmidt,* No. CIV. A. 95-4845, 1996 WL 229369, at *2 (E.D. Pa. May 3, 1996) (court states that a private party's "racially motivated refusal to contract" was actionable under section 1981.) Garrett was not given the opportunity to enter into a settlement agreement, thus his ability to contract was impaired. *See Singh v. State Farm Mut. Auto. Ins. Co.,* 860 P.2d 1193 (Alaska 1993) ("It is well established that a settlement is a contract, provided that it meets minimal contractual requirements.") Garrett, therefore has pled enough facts to establish that he has the possibility of relief against Defendants under section 1981.[1]

Garrett also brings a negligence cause of action against Defendants under the theories of negligence, gross negligence and negligence *per se.* (ECF No. 1-1 at 12-14 ¶¶ 53-58.) Among Garrett's allegations are that "Defendants have a duty to ensure that individuals, claimants, and consumers are not discriminated against based upon their race" (*Id.* at 12 ¶ 54) and that Defendants also have a "duty to follow the laws and regulations regarding the practice or insurance set forth by federal and state law." (*Id.* at ¶ 55.)

For Defendants to be found liable for negligence, there must be a duty of care owed to Garrett. *Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.*, 586 S.E.2d 586, 588 (2003). Garrett has pled enough facts to establish an alleged violation of section 1981 on the basis

---

[1] Garrett combined Defendants' alleged violation of 42 U.S.C. § 1981 and the Fifth and Fourteenth Amendments into one cause of action.

Garrett pleads that there has been a violation of the Fifth and Fourteenth Amendments to the United States Constitution. (ECF No. 1-1 at 9 ¶ 37.) However, Defendants are not state or federal actors, nor are they acting at the behest of the state or federal government, thus, Garrett cannot establish a claim against Defendants. *See Settles v. Pinkerton, Inc.*, 482 F. Supp. 461, 466 (D.S.C 1979) ("the due process clause of the Fifth Amendment applies to and restricts only the federal government and not private persons.") (citations omitted); *see also Civil Rights Cases*, 109 U.S. 3, 11 (1883) ("It is state action of a particular character that is prohibited. Individual invasion of individual rights is not the subject-matter of the [Fourteenth] [A]mendment.")

7

that he was not able to make a contract because of his race. Within section 1981 there is a duty not to discriminate in making or enforcing contracts, and thus a violation of section 1981 would breach a duty owed to Garrett. *See* 42 U.S.C § 1981. This breach of duty would make Defendants possibly liable under a theory of negligence *per se*. *See Trivelas v. S.C. Dep't of Transp.,* 558 S.E.2d 271, 275 (Ct. App. 2001) (negligence *per se* is negligence arising from the defendant's violation of a statute). However, Garrett must be covered by the statute and his injury must also be the type of injury to be prevented by the statute. *Id.* (citing *Rayfield v. South Carolina Department of Corrections*, 374 S.E.2d 910 (S.C. Ct. App. 1988)). Section 1981 was created to prevent racial discrimination from impairing someone's ability to make or enforce of contracts, therefore Garrett is able to establish a claim for negligence *per se* against Defendants.

Because Garrett can possibly establish a negligence claim against Defendants, Heritage, Winburn and Bromell, they have not been fraudulently joined in this action. Additionally, because these Defendants were each citizens and residents of South Carolina at the institution of this action, diversity jurisdiction under 28 U.S.C. § 1332 is improper.

### III. LEGAL STANDARD

A party may move for judgment on the pleadings after the pleadings have closed, but must do so early enough to avoid delaying trial. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Deutsche Bank Nat. Tr. Co. v. I.R.S.*, 361 F. App'x 527, 529 (4th Cir. 2010) (citing *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009). "On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face." *Id.* (citing *Monroe v. City of Charlottesville*, 579 F.3d 380, 386 (4th Cir. 2009)). Given that a Fed. R. Civ. P. 12(c) motion is decided under the same

standard as a 12(b)(6) motion, all facts alleged in the complaint are presumed to be true, and all reasonable inferences must be drawn in the plaintiff's favor. *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) However, the court is not required to accept the legal conclusions the plaintiff sets forth in his Complaint as true. *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir. 1999).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint requires more than a statement simply alleging the defendants illegally harmed the plaintiff. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### IV.     ANALYSIS

a. <u>42 U.S.C. § 1981 Claim</u>

42 U.S.C. § 1981 is a civil rights act stating that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . ." Section 1981 further defines "make and enforce contracts" to include ". . . the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). The United States Supreme Court in *Domino's Pizza, Inc. v. McDonald* stated that for there to be a violation of section 1981, there must initially be identified, an "impaired contractual relationship under which the plaintiff has rights." 546 U.S. 470, 476 (internal quotation marks omitted). The Supreme Court used the language of "rights" because they did not want to exclude or affirm the possibility that a third-party beneficiary could have rights under a contract. *Id.* at 476 n.3. In order to state a

9

claim under section 1981, a plaintiff must establish that he was discriminated upon because of his race, and that this discrimination impaired his ability to make or enforce a contract. *See Denny,* 456 F.3d at 434.

Garrett has not pled that he is in a contractual relationship with Defendants. Garrett pleads that Heritage contracted with Travelers in order to receive automotive liability insurance that would cover Heritage's employees/agents. (ECF No. 1-1 at 6 ¶ 12.) Garrett further pleads that after his collision with Bromell, he made a claim under that insurance policy. (*Id.* at 7 ¶ 19) and that his claim was ultimately denied allegedly on the basis of race. (*Id.* at 8 ¶ 26.)

The first issue the court must decide is Garrett's relationship to the insurance contract between Bromell, Heritage and Travelers. Garrett is not insured under the insurance contract so the court must determine if he is a third-party beneficiary, and moreover whether he can bring a claim to enforce the contract. The second question is whether Traveler's alleged denial of Garrett's claim on the basis of his race impaired his ability to make a contract.

To determine whether Garrett is a third-party beneficiary to the insurance contract for purposes of section 1981 the court must look to the law of the forum state. *Macedonia Church v. Lancaster Hotel Ltd. P'ship,* 560 F. Supp. 2d 175, 181 (D. Conn. 2008). *See also Burnett v. Grattan*, 468 U.S. 42, 47–48 (1984) (the court must look first to federal law to see if there is a law that carries the act into effect, second if there is no federal law that will carry the act into effect then the court may consider the application of state common law, and if there is no state common law then the court looks to the "predominance of the federal interest," as courts are to apply state law only if it is not inconsistent with federal law." (citing 42 U.S.C. § 1988)).

There is no federal common law of contracts that will carry section 1981 into effect, so the court turns to South Carolina State law in order to determine whether or not Garrett would be a

third-party beneficiary. *See Macedonia Church,* 560 F. Supp. 2d at 181 (D. Conn. 2008) (applying Connecticut law); *see also Denny,* 456 F.3d at 436 ("[d]efendant's contention that [plaintiff] may not actually have wanted [a service] ignores the fact that this was a third-party beneficiary contract.") (court points to Virginia law).

Under South Carolina State law, "if a contract is made for the benefit of a third person, that person may enforce the contract if the contracting parties intended to create a direct, rather than an incidental or consequential, benefit to such third person." *Bob Hammond Const. Co. v. Banks Const. Co.*, 440 S.E.2d 890, 891 (S.C. Ct. App. 1994) (citing *Cothran v. Rock Hill*, 43 S.E.2d 615 (1947).) Moreover, "South Carolina contract law carries a presumption that an individual who is not a party to a contract lacks privity to enforce it." *Trancik,* 581 S.E.2d at 861. "Third-party-liability-insurance contracts are generally indemnity contracts whereby the insurer, or the first party, agrees to pay the insured, or the second party, the amount of any damages the insured may become legally liable to pay a third party." *Id.* Garrett is a third party, incidental beneficiary because he does not directly benefit from the contract between Heritage, Bromell and Travelers, possibly benefitting only when there is a covered event under the policy, such as the alleged collision. (ECF No. 1-1 at 7 ¶¶ 17-19.)

The South Carolina Court of Appeals continued in *Trancik*, stating ". . . the third party, or the incidental beneficiary, does not have a contractual relationship with the insurer and cannot maintain an action against the insurer for breach of the insurance contract.") 581 S.E.2d at 861. Garrett in his position as a third party, incidental beneficiary of the policy between Heritage, Bromell and Travelers, has a right to the insurance proceeds from his collision with Bromell. However, because he is not in a contractual relationship with Bromell, Heritage and Travelers, he does not have the right to "enforce" the contract. *Trancik,* 581 S.E.2d at 861. Section 1981 does

11

not however, just refer to "enforcing" contracts, but also to "making" them, so even though Garrett cannot enforce the contract, the court must inquire as to whether or not he was impaired in making a contract.

Under section 1981, a contractual relationship does not have to exist initially for there to be protection, as long as the party would have rights under the proposed contractual relationship. *See Domino's Pizza,* 546 U.S. at 476 ("§ 1981 protects the would-be contractor along with those who already have made contracts.") Section 1981 "prohibits, when based on race, the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms." *Patterson,* 491 U.S. at 176–77.

Travelers alleged denial of Garrett's claim on the basis of race falls within the auspice of section 1981. *See Broomes*, 1996 WL 229369, at *2 ([d]efendant[s] argue that § 1981 does not encompass "a private person's right to enter into settlement negotiations with another party for a motor vehicle accident. [Court states that] [i]f Defendant means to argue that § 1981 does not apply to a racially motivated refusal to contract by a purely private party, the short answer is that the statute on its face clearly applies to such conduct.") (internal citations omitted); *see e.g., Runyon v. McCrary,* 427 U.S. 160, 173 (1976) (section 1981 reaches private discrimination). Garrett wanted to settle his claim with Defendants, which would allow him to make a contract with them. *See Broomes v. Schmidt,* No. CIV. A. 95-4845, 1996 WL 138087, at *2 (E.D. Pa. Mar. 27, 1996) ("[a]n agreement to settle a potential legal claim is a contract"). However, in the denial of his claim based on race, his opportunity to make a contract was impaired. *See Singh,* 860 P.2d at 1199 (Supreme Court of Alaska adopts Alaska Superior Court's view that "an insurance company's refusal to enter into a settlement agreement with an injured party who was not its own insured fell within section 1981 if the basis for refusal was racial discrimination.")

Garrett would have rights to the proceeds under the contract, and but for the denial of his claim, he might have been able to enter a settlement agreement to receive them. Garrett's alleged inability to make a contract because of his race would be a violation of section 1981, thus he has pled a plausible claim upon which relief can be granted. Therefore, the court denies Defendants' Motion for Judgment on the Pleadings as to Garrett's claim for the alleged violation of 42 U.S.C. § 1981.[2]

The court will address the applicability of the McCarran-Ferguson Act briefly as both parties address this in footnotes of their Motion and Response. (ECF Nos. 22 at 4 n.2; 23 at 4 n.2.) This court disagrees with Defendants' assertion that federal law is inapplicable in this case. The McCarran-Ferguson Act, 15 U.S.C. §§ 1011-15 (1945) (amended 1947) does not preempt the use of federal law.[3]

---

[2] Garrett also pleads under the same cause of action that Defendants have violated his Fifth and Fourteenth Amendment rights. (ECF No. 1-1 at 9 ¶ 37.) Defendants are not federal or state actors, thus no claim can be brought against them. *See supra* note 1.

[3] The District Court of Maryland in *Duane v. Government Employees Ins. Co.* citing *Cochran v. Paco, Inc.*, 606 F.2d 460, 464 (5th Cir. 1979) adopted a four-step procedure to determine the applicability of the McCarran-Ferguson Act:

> "(1) If the federal statute does not relate specifically to insurance, (2) the court next must determine whether the challenged activities constitute the business of insurance for purposes of § 1012(b). (3) If so, the court must determine whether the state in question has enacted any law for the purpose of regulating those activities. (4) If such state legislation exists, the court finally must decide whether application of the federal statute would "invalidate, impair, or supersede" that law. [If it does, then the use of the federal law is preempted]."

784 F. Supp. 1209, 1220 (D. Md. 1992), aff'd sub nom. *Duane v. GEICO*, 37 F.3d 1036 (4th Cir. 1994).

Applying the third step, the court did not find any South Carolina State law that regulates the denial of insurance claims based on race. Thus, there appears to be no conflict between state law and federal law.

b. <u>Outrage</u>

Garrett asserts that Defendants "recklessly inflicted severe emotional distress" on him by denying his claim based on race (ECF No. 1-1 at 10 ¶ 41). He further asserts that Defendants' conduct in making the statement about his race being a factor in denying his claim was so "extreme or outrageous" that it exceeded all possible bounds of decency. (*Id.* ¶ 42.) Garrett additionally asserts that his emotional distress was so severe that no reasonable person could be expected to endure it (*Id.* at ¶¶ 43-44), and he suffered injury. (*Id.* at 10-11 ¶ 45.) The tort of outrage in South Carolina requires that

(1) The defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct;

(2) The conduct was so "extreme and outrageous" so as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community;"

(3) The actions of the defendant caused plaintiff's emotional distress; and

(4) The emotional distress suffered by the plaintiff was "severe" such that "no reasonable [person] could be expected to endure it."

*Hansson v. Scalise Builders of S.C.*, 650 S.E.2d 68, 72 (2007) (citing *Ford v. Hutson,* 276 S.E.2d 776, 778) (1981)).

Due to a heightened pleading standard for outrage, the Supreme Court of South Carolina cautioned in *Hansson* that ". . . a party cannot establish a prima facie claim for damages resulting from defendant's tortious conduct with mere bald assertions. To permit a plaintiff to legitimately state a cause of action by simply alleging, 'I suffered emotional distress' would be irreconcilable with this court's development of the law in this area." 650 S.E.2d at 72. Garrett has not simply alleged that he has suffered emotional distress in a vacuum; instead he alleges that because of Winburn's statement denying his claim based on race, he suffered severe emotional distress.

14

Garrett ties his emotional distress directly to Winburn's conduct, asserting that it is extreme and outrageous, and pleads that he has suffered such severe emotional distress that no person could be expected to endure it. For these reasons the court finds that Garrett has stated a plausible claim, thus Defendants' Motion for Judgment on the Pleadings is denied as to Garrett's claim for outrage.

   c. Civil Conspiracy

"It is well settled in South Carolina that the tort of civil conspiracy contains three elements: (1) a combination of two or more persons; (2) for the purpose of injuring the plaintiff; (3) causing plaintiff special damage." *Kuznik v. Bees Ferry Assocs.,* 538 S.E.2d 15, 31 (S.C. Ct. App. 2000). A party that is claiming civil conspiracy also ". . . must plead additional facts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit dismissal of the claim." *Hackworth v. Greywood at Hammett, LLC,* 682 S.E.2d 871, 875 (S.C. Ct. App. 2009) (citation omitted).

Garrett's civil conspiracy allegations incorporate by reference the facts that he pled for his other causes of action. (ECF No. 1-1 at 11 ¶ 47.) Garrett further asserts that Defendants "did combine, conspire or otherwise join with at least one other person and/or entity" to "deny [ ] and/or cause an unreasonable delay in [his ability] to receive the compensation he is entitled to." (*Id.* at ¶¶ 48-49.) Lastly, Garrett pleads that Defendants conspired with one another to "unlawfully diminish and/or defeat insurance claims of claimants based on race." (*Id.* at 8 ¶ 30.) Garrett does not plead separate, independent facts in furtherance of the conspiracy, only reincorporating the facts concerning the other allegations, thus, without them, his claim is not plausible.

Moreover, Garrett fails to plead special damages, which are required to state a claim for civil conspiracy. *See Hackworth*, 682 S.E.2d at 874 (citing *Vaught v. Waites*, 387 S.E.2d 91, 95 (S.C. Ct. App. 1989) ("[ ] because the quiddity of a civil conspiracy claim is the special damage

resulting to the plaintiff, *the damages alleged must go beyond the damages alleged in other causes of action*.") (emphasis added). "Special damages are those elements of damages that are the natural, but not the necessary or usual, consequence of the defendant's conduct . . . [and] must be specifically alleged in the complaint to avoid surprise to the other party." *Hackworth*, 682 S.E.2d at 875 (citation omitted). The South Carolina Court of Appeals further stated in *Hackworth* that "[i]f a plaintiff merely repeats the damages from another claim instead of specifically listing special damages as part of their civil conspiracy claim, their conspiracy claim should be dismissed." *Id.* Finally, South Carolina Rule of Civil Procedure 9(g) also provides "when items of special damage are claimed, they shall be specifically stated." Garrett does not include or specifically list his special damages in his pleading, and he asserts the same damages that he does in his previous causes of action. *Compare* (ECF No. 1-1 at 11 ¶ 52) *with* (ECF No. 1-1 at 9-10 ¶ 39, 11 ¶ 46, 14 ¶ 58.)

Garrett's failure to plead separate, independent facts in furtherance of the conspiracy and to plead special damages leads this court to find that Garrett has failed to state a claim upon which relief can be granted, and therefore the court grants Defendants' Motion for Judgment on the Pleadings as to his claim for civil conspiracy.

  d. Negligence

Garrett pleads that Defendants were negligent under a general negligence theory, a gross negligence theory and/or a negligence *per se* theory. (ECF No. 1-1 at 12-14 ¶¶ 53-58.)

To establish a cause of action for negligence, Garrett must plead that he was (1) owed a duty of care; (2) Defendants breached that duty; and (3) damage proximately resulted from the breach of duty. *Charleston Dry Cleaners & Laundry,* 586 S.E.2d at 588. For gross negligence, Garrett must plead that there has been ". . . the intentional, conscious failure to do something which

[ ] is incumbent upon one to do or the doing [of something] intentionally that one ought not to do." *Hollins v. Richland County Sch. Dist. One,* 427 S.E.2d 654 (1993) (citing *Richardson v. Hambright*, 374 S.E.2d 296, 298 (1988)) (internal quotation marks omitted). It is the failure to exercise slight care. *Clyburn v. Sumter County Sch. Dist. # 17*, 451 S.E.2d 885 (1994). Lastly, Garrett pleads negligence *per se,* which stems from the violation of a statute. *See Williams ex rel. Estate of Williams v. CSX Transp., Inc.,* No. 2007-MO-001, 2007 WL 8434527, at *3 (S.C. Jan. 2, 2007) ("[w]hile the violation of a regulation may constitute negligence *per se*, this only establishes the duty and breach elements of a negligence claim.") In order for Garrett to state a claim for negligence *per se* the court must also evaluate (1) whether the type of injury pled is the type to be prevented under the statute, and (2) whether Garrett is within the category of people to be protected by the statute in order to complete his claim. *Whitlaw v. Kroger Co.,* 410 S.E.2d 251, 252-53 (1991).

Garrett alleges in particular that Defendants have two duties: the first is a "duty to ensure that individuals, claimants, and consumers are not discriminated upon their race"; and second, "a duty to follow the laws and regulations regarding the practice of insurance set forth by federal and state law." (ECF No. 1-1 at 12 ¶¶ 54-55.) Garrett alleges that Defendants breached these duties in a myriad of different ways (*Id.* at 12-13 ¶ 56) and that he has been injured and is entitled to damages. (*Id.* at 13-14 ¶ 57-58.)

Garrett alleges in particular that Defendants "failed to properly investigate [his] claims." (*Id.* at 12 ¶ 56(a).) Under South Carolina law, an insurer has a "good faith duty to investigate a claim." *Flynn v. Nationwide Mut. Ins. Co.*, 315 S.E.2d 817, 820 (S.C. Ct. App. 1984) (citing *Lord v. State Automobile and Casualty Underwriters, Des Moines, Iowa*, 208 Kan. 227, 491 P.2d 917 (1971)). However, under *Carolina Bank & Tr. Co. v. St. Paul Fire & Marine Co.*, "the duty of

17

good faith in the performance of obligations based on or arising under the contract does not extend to a person who is not a party to the insurance contract." 310 S.E.2d 163, 166 (S.C. Ct. App. 1983). Garrett is not a party to the insurance contract; thus, Defendants do not owe him a duty of good faith and he cannot state a claim of negligence for Defendants' alleged failure to investigate.

Garrett also pleads that Defendants were negligent in allegedly violating or permitting employees/agents to violate 42 U.S.C § 1981 and the Fifth and Fourteenth Amendments to the United States Constitution, and South Carolina Code § 38-59-20 (2017) (Improper Claim Practices under the South Carolina Claims Practices Act). Garrett has appropriately pled a plausible claim for relief for Defendants alleged violation of 42 U.S.C. § 1981, for the denial of his right to make a contract based on race. Section 1981 was enacted in order that people within the jurisdiction of the United States would have the ability to make or enforce a contract, without being discriminated against based on race. The denial of Garrett's claims based on race is the type of injury to be prevented by the statute. Because of the alleged violation of section 1981, and injury therein that Garrett allegedly suffered, Garrett can bring a claim of negligence *per se* against Defendants.

However, as to Defendants' alleged violation of South Carolina Code § 38-59-20, there is no private right of action under the statute and thus Garrett cannot bring a negligence *per se* claim against Defendants under this statute. *See Masterclean, Inc. v. Star Ins. Co.,* 556 S.E.2d 371, 376 (2001) ("Third parties do not have a private right of action under S.C. Code Ann. § 38–59–20. Instead, third parties are entitled to administrative review before the Chief Insurance Commissioner.") (internal citations omitted).

Garrett has alleged that Defendants were negligent either generally, grossly, or *per se*, and because Garrett has alleged facts sufficient enough to allow him to state a claim of negligence *per se* against Defendants for the alleged violation of section 1981, the court denies Defendants'

18

Motion for Judgment on the Pleadings as to his claims for negligence, negligence *per se* and gross negligence.

## V. CONCLUSION

For the aforementioned reasons, the court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). The court **GRANTS** Defendants' Motion as to the claim for civil conspiracy without prejudice. The court **DENIES** Defendants' Motion as to the claims for outrage, negligence, gross negligence and negligence *per se*. The court further **DENIES** Defendants' Motion as to the alleged violation of 42 U.S.C. § 1981, but **STRIKES** the Fifth and Fourteenth Amendment claims from this cause of action.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

September 28, 2017

Columbia, South Carolina